## Case No. 13,852.

THACKAREY et al. v. The FARMER OF SALEM.

[Gilp. 524.] [1]

District Court, E. D. Pennsylvania. Jan. 23, 1835.

ADMIRALTY JURISDICTION—THE SEA—TORTS—CONTRACTS—LOCALITY—SUBJECT MATTER—MARITIME SERVICE.

1. Waters within the ebb and flow of the tide, are to be considered as the sea.

2. In cases of torts, injuries and offences, locality brings them within the admiralty juris-

1 [Reported by Henry D. Gilpin, Esq.]

diction; but in cases of contract, it is also necessary that the subject matter be of a maritime nature.

[Cited in Cox v. Murray, Case No. 3,304; Leland v. The Medora, Id. 8,237; U. S. v. New Bedford Bridge, Id. 15,867; Waring v. Clarke, 5 How. (46 U. S.) 488; Doolittle v. Knobeloch, 39 Fed. 41.]

3. A contract relative to service on board of a vessel, and on the sea or waters within the ebb and flow of the tide, cannot be enforced in the admiralty, unless the service is essentially a maritime service.

[Cited in Boon v. The Hornet, Case No. 1,640; The D. C. Salisbury, Id. 3,694; Cope v. Vallette Dry-Dock Co., 16 Fed. 925; The Alabama, 19 Fed. 545; Fox v. Patton, 22 Fed. 747.]

4. Steamboats and lighters engaged in trade or commerce on tide water, and the seamen employed on board, are within the admiralty jurisdiction; but not ferry boats or those engaged in ordinary traffic along the shores.

[Cited in Packard v. The Louisa, Case No. 10,652; Murray v. The Nimick, 2 Fed. 90; Cope v. Vallette Dry-Dock Co., 10 Fed. 145.]
[Cited in Walters v. The Mollie Dozier, 24 Iowa 198.]

5. A contract for the payment of labour, on board of a vessel employed in carrying fuel to the city of Philadelphia, from the opposite shore of the Delaware river, cannot be enforced by a suit in rem in the admiralty.

[Cited in Packard v. The Louisa, Case No. 10,652; The Mary, Id. 9,190; The Canton, Id. 2,388; The Pioneer, 21 Fed. 427. Cited in brief in The May Queen, Id. 9,360. Disapproved in The General Cass, Id. 5,307; The F. & P. M. No. 2, 33 Fed. 512.]

This was a libel, for wages alleged to be due for services performed by the libellants [Marmaduke Thackarey and Jacob Crilley], as mariners, on the high seas. The libel concluded with a prayer for process of attachment. The boat, which was of forty-two tons burthen and upwards, plied between the port of Philadelphia, and Cooper's creek, a small stream which is nearly opposite thereto, and enters the Delaware from the Jersey side of the river. The vessel was employed in bringing wood for fuel, from the creek to the city, and in no other service. On application to the judge, at his chambers, the process prayed for in the libel was refused.

HOPKINSON, District Judge. The libel in this case was presented to me, at my chambers, on the 16th December last, concluding with a prayer for process of attachment against the vessel, and that she should be condemned and sold, for the payment of the wages claimed by the libellants. The libel contained the usual allegation, supported by the affidavit of one of the libellants, "that the said boat or vessel is about to proceed to sea, before the expiration of ten days next after the delivery of her cargo." I declined to order the process asked for, and think it is incumbent upon me to give my reasons for so doing; and the more so, as the occasion is a fit one for an endeavour to bring, within some rule or principle, a class of cases, which is now growing upon the admiralty jurisdiction of this court. The libel states that the libel-

lant, Marmaduke Thackarey, on the 13th October, 1834, at the port of Philadelphia, in the said district, at the request of Jacob Crawford, master of the American boat Farmer of Salem, of forty two tons and upwards, shipped as a mariner on board the said boat to perform voyages on the high seas, and within the jurisdiction of this court, to wit, from the said port of Philadelphia, to Cooper's creek, in the state of New Jersey, and thus alternately between the said port of Philadelphia and Cooper's creek, at the following rate of wages, to wit, two voyages at two dollars and fifty cents each; one voyage at three dollars; two voyages at one dollar and fifty cents each; and seven trips at two dollars each. The claim of the other libellant is set out, substantially, in the same manner.

There is certainly no want of formality in this libel, and if we were not permitted to look out of it, there would be no want of jurisdiction in this court, over the subject matter of it. The known truth of the case is this. Cooper's creek is a small stream issuing into the Delaware, from the Jersey side of the river, about two miles above the city or port of Philadelphia. The boat in question was employed in bringing wood for fuel from this creek to the city, and in no other service; making her voyages, as they are called in the libel, at the rate of about two in every week. It appears that she performed about twelve of these voyages in about six weeks. The libellants were hired and paid by the trip, by a verbal agreement, in the manner of hiring common labourers. Their duty was to take this boat to and fro, between the city and the creek, and to load and unload the wood brought by her to market. The time of the passage could seldom exceed an hour, and must have been frequently a shorter period. Such were the services and the voyages on the high seas, which are made the foundation for the jurisdiction of a court of admiralty, for the recovery of the wages of the libellants, as mariners.

Applications have so multiplied for admiralty process, to recover wages for services performed, on board of our river craft, that I have found it necessary to make a pause in granting it, until I could carefully examine the subject, and, if possible, ascertain the limit to which the jurisdiction of this court may rightfully be extended, in such cases. Little regard has been had, in these applications, to the character of the use or employment of the vessel; the manner in which she was navigated; or the nature of the contract and services to be performed. The common river boats, of every size, have become ships or vessels, navigating the high seas; their daily trips, from shore to shore of adjoining states, are voyages on the high seas; and the loading and unloading of wood and similar articles for the market, brought from places within a few miles of the city, for daily wages, are denominated marine services and are maritime contracts. No more has been

thought necessary to be shown, than that the thing floated on the water, and that the water was within the ebb and flow of the tide. I have, in several of such instances, refused the process demanded; but it has become necessary to do it in a more formal way, and to attempt to fix some rule for the government of similar cases. I confess that I do not expect to be able to draw a clear line, which will decide the place of every case that can occur, to be within or without the admiralty jurisdiction; but I hope to fix some principle, as a guide for future proceedings in this court, unless they shall be rejected by a higher authority.

In pursuing the inquiry, into which I am entering, I am saved from the immense labour, so ably performed by a learned judge in the case of De Lovio v. Boit [Case No. 3,776], of tracing the history of the jurisdiction of the admiralty, through its struggles with the common law courts, and of noticing the faint, equivocal, and changing lines, that have been drawn, from time to time, between the powers of these courts. I shall not find it necessary to go beyond the constitution, legislative acts, and judicial decisions of our own country. These are imperative upon this court, and supersede every other opinion or authority. My examination of this interesting question will, consequently, be brought within, comparatively, a narrow space, and may be made with reasonable brevity.

By the constitution, the judicial power of the United States, is extended to "all cases of admiralty and maritime jurisdiction;" and the judicial act, establishing the courts of the United States, carrying into effect the jurisdiction granted by the constitution, has awarded to the district court, "cognisance of all civil cases of admiralty and maritime jurisdiction." The inquiry then, in every question of the power of the court, arising under this branch of its jurisdiction, is whether the cause is of admiralty and maritime jurisdiction. This inquiry also might lead us over a vast space; but, for our present purpose, that is, of determining whether the case now before the court is one of the description mentioned, it is unnecessary to go much further than to a judgment of the supreme court of the United States, rendered with great deliberation and care.

The contract I am required to enforce must be maritime, or I have no right to touch it. In order to bring it within this description, the libel alleges that it was for the performance of services on certain voyages on the high sea. Were the services of the libellants rendered on the high sea, in the legal signification of the terms? In the case of The Thomas Jefferson, 10 Wheat. [23 U. S.] 428, this question seems to have been put to rest, on principles long and well established. The opinion of the court was delivered by Judge Story. It was a suit, brought in the district court of Kentucky, for subtraction of wages. The libel claimed them on a voyage

from shipping port in that state, up the river Missouri, and back again to the port of departure: and the question was, whether this case was of admiralty and maritime jurisdiction, or otherwise within the jurisdiction of the district court. I will here remark, this was the case of a steamboat, navigated, as they usually are, on a river far from the sea; but that neither the distance, nor the manner of navigating the boat, was made an objection to the jurisdiction. We may add, as a matter of notoriety, that she was employed in transporting passengers and merchandise between the places of her departure and destination. The judge, learned upon all subjects, and peculiarly so on this, states that, "in respect to contracts for the hire of seamen, the admiralty never pretended to claim, nor could it rightfully exercise, any jurisdiction, except in cases where the service was substantially performed upon the sea, or upon waters within the ebb and flow of the tide." Thus, as to the purposes of jurisdiction, in such a case, the court decides, in full conformity with acknowledged principles of law, that waters, which are within the ebb and flow of the tide, are to be considered as the sea; that a contract for wages, to be earned on waters so situated, is a maritime contract; that the service is a maritime service; and that the cause arising from it is of admiralty and maritime jurisdiction, as fully as if it related to a voyage to Europe. The judge presses the principle still further, and says, "there is no doubt that the jurisdiction exists, although the commencement or termination of the voyage may happen to be at some place beyond the reach of the tide." In that case, the libel was dismissed, for want of jurisdiction, because "the voyage, not only in its commencement and termination, but in all its intermediate progress, was several hundred miles above the ebb and flow of the tide."

If, then, the locality of the service were sufficient to give jurisdiction to the admiralty over a contract, it is clear that I should sustain the present claim. The whole service was performed on the waters of the Delaware, within the ebb and flow of the tide. In conformity with the doctrine of the supreme court, I have repeatedly taken cognisance of claims for wages, earned in vessels plying as traders, carrying passengers and goods on freight, between this port and places on the river, in the states of Delaware and New Jersey. In the case of Smith v. The Pekin [Case No. 13,090], the question was elaborately argued in this court, and decided as I have mentioned. But locality is not, of itself, enough to give jurisdiction to the admiralty in cases of contract. We must also look to the subject matter of the contract; to the nature of the service and employment. We shall then discover that, in some instances, the service may be done strictly and truly on the sea, and yet the cause will not be "of admiralty and maritime jurisdiction." It is true, that in cases of torts, injuries and of-

fences, the jurisdiction is settled by the place where they are committed; but not so as to contracts. The difficulty we have to struggle with is, to establish a satisfactory rule or line by which the subject matter of the contract and service may be clearly defined. I have acknowledged my inability to give such a rule, which will be universal in its application. Each case, as it occurs, must be decided by its circumstances, under the control of some principle as nearly general as can be obtained, on a subject so uncertain in its nature. It will be easier to say that a particular service is not marine, than to give a rule which will embrace or exclude each that may occur.

By referring again to the case of The Thomas Jefferson, we shall find a principle, which will serve us for a general guide to our inquiries. It is stated that, "the material consideration is, whether the service is essentially a maritime service." It is true, that the question still remains, what is a maritime service? In that case, the only test alluded to, was the locality of the service, whether performed on tide water or not, because, in that case, no other question than that of locality arose, or was necessary to be examined or decided. The libel was dismissed, because the service was not done within the ebb and flow of the tide, and, therefore, clearly not maritime, however it might have been in other respects. But the court did not say or intimate, that every service performed on tide water is, therefore and necessarily, a maritime service. That it was done on tide water is an essential circumstance; but, non constat, that other circumstances may not also be essential to bring it under the admiralty jurisdiction. Can we say, did that opinion mean to say, that every thing done upon the sea, or upon tide water, is a maritime service? I think not. In the case of De Lovio v. Boit, above quoted, Judge Story assists us on this point. He says, "The true interpretation of the words, things done on the sea, in this connection, would seem to be all things done touching the sea, that is, maritime affairs in general; and this is the approved interpretation asserted by the admiralty." He afterwards says, the jurisdiction extends to "all cases of maritime service and labour." In both instances, he shows that something besides locality enters into the question of jurisdiction; that we must attend to the nature of the transaction, the kind of service or labour, and inquire whether they relate to maritime affairs or not, and not merely to the place where they are done. If a thing done, or a contract made, in fact, upon the land, is considered to have been done on the sea, provided it relates to maritime affairs, we but follow out the same reason, or turn it back on the subject, in saying, that if the contract or thing does not relate to maritime affairs, if the service or labour are not in themselves maritime, they will not be taken, on the question of jurisdiction, to have

been done on sea, although, in fact, they were so. The circumstance of the place, where the thing is done, follows the nature of the thing, and, as that is maritime or otherwise, the jurisdiction prevails or is denied. In the case of The Jerusalem [Case No. 7,294], the same judge gave the law as he did in the case of The Thomas Jefferson. "The true doctrine was always asserted by the learned judges of the admiralty, and has been recently recognised by Justice Buller, that the jurisdiction as to contracts, depends not upon the locality, but upon the subject matter of the contract." And he adds, that the admiralty has "perfect jurisdiction over all maritime contracts." To be a maritime contract, as I have before said, it is not enough that the subject matter of it, the consideration, the service, is to be done on the sea, it must be in its nature maritime; it must relate to maritime affairs; it must have a connection with the navigation of the ship, with her equipment or preservation, or with the maintenance and preservation of the crew, who are necessary to the navigation and safety of the ship. Thus a carpenter, a surgeon, a steward, though not strictly mariners or seamen, may all sue for their wages in the admiralty, because they contribute, in their several ways, to the preservation and support of the vessel and her crew.

With all this aid, we meet with embarrassing difficulties in every attempt to designate a clear line, which will separate, with satisfaction and consistency in all its parts, cases of contract and service arising on rivers, into which the tide flows, proper for the admiralty jurisdiction, from those which are not so. On the sea, extra fauces terræ, the difficulty is hardly, at this time, felt, having been removed or cut down by judicial decisions, as in the case of the carpenter, surgeon, and others. But we have no such description of the vessel or her employment, or the services of those on board of her, navigating our rivers, as will at once decide the question of jurisdiction. The circumstances of any given case, the kind of vessel, the business she is engaged in, the places between which she is navigated, may make it apparent that it cannot be one for the cognisance of the admiralty, without furnishing a general rule of exclusion.

Cases will readily occur to the legal mind, in which, although the service is performed on the sea, or within the ebb and flow of the tide, no doubt can be entertained that it is, in no sense, a maritime service, and cannot be cognisable in the admiralty. Nor does it depend on the manner, in which the vessel is equipped, with or without masts and sails; nor upon the power, by which she may be propelled, by sails, by oars or by steam. Steamboats, engaged in the business of trade or commerce, are clearly subject to this jurisdiction; and a learned judge, in another district, has considered lighters employed on tide waters, in the carriage of goods to and from shipping, to be under this jurisdiction. On the other hand, boats having masts and sails may, nevertheless, be clearly without it; such as ferry-boats used on the tide waters of our rivers, and plying from shore to shore, between two states. Also numerous boats of various sizes, which are employed daily in bringing fruit and vegetables to the market. I think no one would hesitate to say, that such vessels can, with no legal propriety, be said to perform voyages on the high seas; nor that the persons employed on board of them, hired by the trip or otherwise, are mariners engaged in marine services. Indeed they are, generally, loaded and unloaded, and navigated by men, who come from the fields and orchards, which they have cultivated, and bring the produce of their labour to market. They are farmers and gardeners, either for themselves or hired by others, and not sailors. If we should take the language of the supreme court, in the case quoted, in its broadest signification, such boats so employed, and those, who navigate them, would be subject to the admiralty jurisdiction. The service is performed "upon waters within the ebb and flow of the tide." But, as I have before said, the court had in their view only the case before them, which turned entirely on the locality of the service, and, as to that, they decided that the jurisdiction depended on the fact whether it was done upon tide water or not. We have seen that they thought, as a general proposition, that "the material consideration was, whether the service was essentially a maritime service;" and they applied the principle only to the case before them, deciding that it was not then a maritime service, because it was not performed on the sea, or on tide waters, but not intimating that this circumstance alone would make a service maritime.

The character of the service, whether maritime or not, will depend, not only upon the particular business or employment of the individual on board of the vessel, but also upon the business or employment of the vessel. Thus a vessel may be navigated for foreign commerce, on the broad ocean, but persons may be hired on board of her, for services, which could not be called marine, and of which the admiralty would take no cognisance. On the other hand, the individual may be engaged in the actual navigation of the vessel, but she may be so employed that no service on board of her can be considered to be maritime. In regard to the character of the vessel or the business in which she is engaged, which is the object of our present inquiry, it is not questioned that those employed in foreign commerce are within the jurisdiction of the admiralty. As to those, which are employed on our tide waters, in going from place to place, in the United States, I hold them also to be under the same jurisdiction, provided they are occupied in the business of trade and commerce, in a liberal and fair meaning of

the terms, in which I do not include the petty traffic of market or ferry boats, nor the carriage of fuel to a city, from its neighbourhood, and other services of the same description. I am aware that there is a want of precision in this rule, and it is intended only as a general guide. In every particular case, the judge must decide, from its circumstances, whether the employment of the vessel is in the business of trade or not; for so far I think the rule may be relied upon. The uncertainty is as to what should be considered to be trade and commerce. This criterion is not without support by good authority. Judge Winchester, whose learning in the admiralty law is highly and justly extolled, adverts to it. He says, in the case of Stevens v. The Sandwich [Case No. 13,409], "within the cognisance of this jurisdiction, are all affairs relating to vessels of trade, and the owners thereof, as such; and all matters which concern owners, proprietors of ships, as such;" again "whatever is of a maritime nature, either by way of navigation upon the seas, or negotiation at or beyond the sea, in the way of marine trade or commerce." In conformity with this rational and intelligible doctrine, Judge Story, in the case of De Lovio v. Boit [Id. 3,776], says, that the words "admiralty" and "maritime jurisdiction," include "all transactions and proceedings relative to commerce and navigation, and to damages or injuries upon the sea."

If we turn our attention to the act of congress [1 Stat. 131] for "the government of seamen in the merchant service," under the provisions and authority of which this libel is filed, and the process of the court demanded, many very direct arguments and inferences present themselves, to induce us to believe that a case like this never could have been in the contemplation of congress, in making the regulations, particularly as to the hiring of seamen and the recovery of their wages, found in that law. But I content myself with this general reference to it, as a particular analysis would require a longer examination and discussion than the occasion calls for or would warrant.

The general result to which my inquiry into this subject has brought me is, that as to torts, injuries and offences, locality gives jurisdiction; but as to contracts, there must be something more. It is not enough that the service performed, or to be performed, is on the high sea, or on tide water, it must in its subject matter be maritime; it must have some relation to trade and commerce; some connection with a vessel employed in trade; with her equipment, her preservation, or the preservation of her crew. Thus a carpenter, a surgeon, a steward, all contribute, in their several ways, to the preservation of the ship or her crew. But if the master should take with him a servant, whose sole business should be to shave him or comb his hair; or another to amuse him with a violin, the service would be performed on the high sea, but would it be a maritime contract or service, for which the ship could be libelled and attached in the admiralty; or her owners be personally responsible by any process?

In a late case, in this court, Trainer v. The Superior [Id. 14,136], a libel was filed for wages earned on board of a boat, employed in going from place to place, in bays and rivers, on tide water, in Pennsylvania, Delaware, Maryland, Virginia and North Carolina, carrying a museum of curiosities, which were exhibited, in the boat, at the various places at which she stopped. She had no other object. The libellants were employed as musicians for the exhibition, but occasionally assisted, at their pleasure, in rowing the boat, when the sails could not be used. She was a large canal boat. I dismissed the libel, on the ground that the contract and services of the libellants could in no sense be considered maritime, although performed on tide water. On the other hand, in Wilson v. The Ohio [Id. 17,825], I sustained the libel of the crew of the steamboat Ohio, plying between this port and Delaware City, in the state of Delaware, for she was employed not only in taking passengers, but in the transportation of merchandise between her port of departure and places in the Southern and Western states, which is strictly a trading service or employment. I do not mean to say whether a boat carrying only passengers, would or would not be within the same rule.

I have thus given, not perhaps as concisely as it might have been done, a view of the reasons which determined me to refuse the process prayed for by the libellants in this case. If they are not altogether precise and satisfactory, it may be because the subject is not susceptible of a rule which will be certain and universal in its application, or because I have not the ability to define it with accuracy and clearness. Having taken upon myself to refuse, at my chambers, to attach and detain the vessel, I was obliged to do so without argument, as that would have produced a delay injurious and expensive to a party whom I thought not amenable to this court. Occasions may occur hereafter when this subject may be more fully considered, and more satisfactorily decided.